**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| INTERCOVE INC.; | ) | |
| LIME CRUNCH INC.; and | ) | Civil Case No. |
| NOW MARKETING SERVICES INC., | ) | |
| | ) | |
| Plaintiffs, | ) | Judge |
| | ) | |
| v. | ) | |
| | ) | |
| ANTTIX INC.; and CHRISTOPHER | ) | |
| JOHANSEN, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**COMPLAINT**

Plaintiffs INTERCOVE INC., LIME CRUNCH INC., and NOW MARKETING SERVICES INC. (hereinafter, collectively, "Plaintiffs"), by and through their undersigned counsel, for their Complaint against ANTTIX INC. and CHRISTOPHER JOHANSEN (hereinafter, collectively, "Defendants"), alleges as follows:

**NATURE OF THE ACTION**

1.      This civil action is for false advertising, unfair competition, and deceptive trade practices in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a) and the Illinois Uniform Deceptive Trade Practices Act 815 ILCS 510/2, and for tortious interference with prospective advantage in violation of Illinois common law.

2.      This action further seeks relief in connection with the misappropriation of trade secrets in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq*. and the Illinois Trade Secrets Act, 765 ILCS 1065, *et seq*.

## THE PARTIES

3.     Plaintiff INTERCOVE INC. (hereinafter "Intercove") is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business located at 270 Nottingham Court, Crystal Lake, Illinois, 60014.

4.     Plaintiff LIME CRUNCH INC. (hereinafter "Lime Crunch") is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business located at 270 Nottingham Court, Crystal Lake, Illinois, 60014.

5.     Plaintiff NOW MARKETING SERVICES INC. (hereinafter "Now Marketing") is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business located at 270 Nottingham Court, Crystal Lake, Illinois, 60014.

6.     Upon information and belief, defendant ANTTIX INC. (hereinafter "Anttix") is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business located at 2541 Division Street, Unit 105, Joliet, Illinois 60435.

7.     Upon information and belief, defendant CHRISTOPHER JOHANSEN (hereinafter "Johansen") is a natural person residing at 3805 Indian Head Lane, Joliet, Illinois 60435.

## JURISDICTION & VENUE

8.     This Court has subject matter jurisdiction over this action for false advertising and unfair competition under the Lanham Act and for trade secret misappropriation under the Defend Trade Secrets Act pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367 because such claims arise from the same operative facts or are otherwise so closely related to Plaintiffs' federal law claims that they necessarily form part of the same case or controversy.

9.     This Court has personal jurisdiction over Defendants because Defendants have either continuously resided in this judicial district and/or have enjoyed continuous and systematic business contacts with the State of Illinois.

10.     Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391(b).

## FACTUAL BACKGROUND

11.     At all times relevant to the action, Plaintiffs were in the business of providing a broad range of marketing and promotional services, including without limitation: web site design, web hosting, and the development and implementation of marketing strategies and collateral materials related thereto (hereinafter, collectively, "Products and Services").

12.      In order to develop its roster of clients and to generate new business for the company, Now Marketing retained defendant Johansen as an independent sales representative and account manager.

13.     In furtherance of this engagement, Now Marketing granted to Johansen temporary access to its internal business, marketing, sales and customer data, including (i) current customer lists and contact information; (ii) prospective customer lists and contact information; (iii) service contracts and related agreements; (iv) lead generation materials; (v) third-party vendor lists; (vi) third-party vendor agreements; and (vii) other proprietary business information (collectively, hereinafter, the "Confidential Business Material").

14.     Upon information and belief, Defendant Johansen surreptitiously duplicated or otherwise compiled and obtained by improper means some or all of the Confidential Business Material for commercial use in connection with other commercial opportunities, including commercial opportunities with and on behalf of defendant Anttix.

15.     As a further consequence of this relationship, defendant Johansen had the opportunity to meet telephonically and in person with Now Marketing's prospective and existing clientele.

16.     During these conversations with customers and prospective customers, defendant Johansen overstated his role vis-à-vis Now Marketing, often referring to himself as its "owner" and/or "founder."

17.     In fact, defendant Johansen did not "found" Now Marketing, nor has he ever held an ownership interest therein.

18.     In connection with the eventual termination of its business relationship with defendant Johansen in August 2018, Now Marketing requested in writing the timely return of "any Company materials in [Defendant Johansen's] possession or control." A true and correct copy of this request is attached hereto as Exhibit 1.

19.     Despite the acknowledgment of his receipt of the request, defendant Johansen did not return any of the materials demanded, including the Confidential Business Material that was included therein.

20.     Upon information and belief, defendant Anttix hired defendant Johansen as its Director of Sales and Marketing at some time in 2018.

21.     Upon information and belief, defendant Anttix had knowledge of defendant Johansen's previous affiliation with Now Marketing.

22.     At all times relevant hereto, defendant Anttix was engaged in the business of providing, *inter alia*, services that were substantially similar to and in direct competition with the Products and Services already contracted for.

23.     Beginning no later than September 2018, Defendants used the Confidential Business Material in order to contact and solicit customers then under contract with Now Marketing.

24.     Defendants' solicitations related, *inter alia*, to the proposed provision by defendant Anttix of services that were substantially similar to and in direct competition with the Products and Services already contracted for.

25.     By virtue of their possession of the Confidential Business Material, Defendants had knowledge of the specific terms of the existing agreements then in effect between these "prospects" and Now Marketing or its assignees[1] and used the unlawfully obtained "inside information" to tailor the timing, manner, and substance of its solicitations.

26.     Ostensibly to bolster these solicitation efforts, defendant Johansen made numerous factual misrepresentations regarding website accessibility within the meaning of the Americans with Disabilities Act,  42 U.S.C. § 12101, *et seq*. ("ADA").

27.     Beginning no later than October 2018, defendant Johansen acting on behalf of defendant Anttix repeatedly contacted Now Marketing's clients via telephone, text message, e-mail, and in-person visits and his statements included, without limitation: (i) representing to one or more of Plaintiffs' clients that one of defendant Johansen's other clients had been fined $3,000 by the U.S. Department of Justice for alleged ADA noncompliance; (ii) warning one or more of Plaintiffs' clients that their current business websites created and hosted by Plaintiffs would expose them to fines levied by the U.S. Department of Justice for alleged noncompliance with the ADA;

---

[1] Pursuant to the terms of their service contracts and related agreements and in consideration of the Plaintiffs' respective areas of focus, Now Marketing elected to assign several contracts for Products and Services to Intercove and Lime Crunch in July 2018.  For the sake of clarity and brevity and unless otherwise expressly indicated, references to Now Marketing's clientele in this Complaint are intended to also include persons or entities who were formerly clients of Now Marketing and whose contracts for services therewith were subsequently assigned to Intercove or Lime Crunch.

(iii) advising one or more of Plaintiffs' clients that defendant Anttix possessed the technical capabilities to accurately audit and fully remediate their websites for ADA compliance purposes; (iv) guaranteeing to one or more of Plaintiffs' clients that hiring defendant Anttix to replace Plaintiffs in the provision of the Products and Services would somehow immunize them, in perpetuity, from litigation related to website accessibility; and (v) warning one or more of Plaintiffs' clients that their current business websites created and hosted by Plaintiffs would expose them to liability related to noncompliance with the General Data Protection Regulation promulgated by the European Union ("GDPR").

28. In each instance, the representations by defendant Johansen as enumerated in the preceding paragraph were either demonstrably false or, alternatively, calculated to mislead, confuse, or deceive.

29. Predictably, this flurry of solicitations and the misrepresentations contained therein regarding compliance risks and Defendants' supposed ability to mitigate or remediate those threats did generate confusion and panic among Now Marketing's clientele, many of whom reasonably interpreted defendant Johansen's sales pitch as a thinly veiled threat that the failure to buy what Defendants were selling would itself lead to the initiation of a lawsuit or other enforcement action against them alleging ADA or GDPR noncompliance.

30. The disruptive effect of these solicitations and the misrepresentations contained therein was further exacerbated by the fact that, in many cases, the target of such solicitations believed wrongly that defendant Johansen was still affiliated with or acting on behalf of Plaintiffs, a mistaken belief that was nonetheless fostered by defendant Johansen's own statements and omissions.

31.     Defendants further sought to exploit this confusion regarding ADA compliance by launching a website for the "Web Accessibility Initiative" (WAI), which purports to be an independent organization whose goal is "…to educate and connect businesses and organizations with accessibility tools and resources."

32.     The website, located at www.webaccessibilityinitiative.org identifies defendant Anttix as one of its "collaborating businesses."

33.     The WAI website helpfully provides a contact form for those who might "like the WAI to perform a preliminary or comprehensive accessibility assessment" for their businesses' websites.

34.     The extortionate nature of Defendants' scheme comes into even sharper focus when the WAI website further intones: "Do you know of a website that is inaccessible? The WAI will contact the website owner, if possible, on your behalf to let them know and offer assistance."

35.     The representations made by Defendants via the Web Accessibility Initiative are calculated to falsely convey to the public that the WAI is a non-governmental organization acting in the public interest.

36.     To the contrary, the WAI website is intended to operate as a lead-generation and marketing tool for the exclusive benefit of Defendants.

37.     The profoundly cynical and misleading nature of Defendants' WAI gambit is further laid bare by the very name itself.  Even the most cursory knowledge of the landscape of web accessibility issue advocacy would yield familiarity with the World Wide Web Consortium (W3C) and its internationally-recognized Web Accessibility Initiative, whose website can be accessed at www.w3.org/WAI.

38.     The *real* Web Accessibility Initiative—that is, W3C's WAI—is the body that promulgates the Web Content Accessibility Guidelines (WCAG 2.0 AA), which are recognized globally as "best practices" governing web accessibility.

39.     Defendants' blatant hijacking of the "WAI" name for its own purposes is not only likely to cause confusion as to its affiliation—it seems precisely calculated for that very purpose, as part of their broader scheme to use misrepresentations and fear—and in this case, possibly trademark infringement—to improperly boost their revenues at the expense of Plaintiffs and their clients.

<u>**COUNT I**</u>
**(Violations of the Lanham Act (15 U.S.C. §1125(a))**

40.     Plaintiffs repeat and re-allege each and every allegation of paragraphs 1-39 as though fully set forth herein.

41.     Defendants have disseminated into interstate commerce false and misleading statements regarding penalties and fines levied against websites for ADA and GDPR violations and these false and misleading statements are materially deceptive as to the nature, characteristics, and quality of Plaintiffs' Products and Services and have caused or are likely to cause competitive injury to Plaintiffs.

42.     The dissemination described in the preceding paragraph is in violation of Section 43(a) of the Lanham Act.

43.     Defendants have also disseminated into interstate commerce false and misleading statements concerning the nature of Defendants' capabilities relative to website accessibility auditing and remediation, and such false and misleading statements constitute false and deceptive advertising that is likely to mislead and/or has misled consumers about such capabilities, causing or likely to cause competitive injury to Plaintiffs.

8

44.     The dissemination described in the preceding paragraph is in violation of Section 43(a) of the Lanham Act.

45.     Defendants have disseminated into interstate commerce false and misleading statements concerning the origin and affiliation of its web accessibility auditing and remediation services by adopting, as its own, the name of an already globally recognized leader in the field of website accessibility, and such false and misleading statements constitute false and deceptive advertising that is likely to mislead and/or has misled consumers about the origin and affiliation of such services, causing or likely to cause competitive injury to Plaintiffs.

46.     The dissemination described in the preceding paragraph is in violation of Section 43(a) of the Lanham Act.

47.     Defendants are willfully, knowingly, and intentionally making false and misleading statements in their advertising and, unless immediately enjoined by this Court, will continue to deceive, mislead, and confuse customers to derive economic benefit at the expense of Plaintiffs and the public at large.

48.     As a direct and proximate cause of Defendants' unlawful acts and practices, including those set forth herein, Defendants have caused, are causing, and unless immediately enjoined by this Court, will continue to cause immediate and irreparable harm to Plaintiffs for which there is no adequate remedy at law, and for which Plaintiffs are entitled to injunctive relief.

**WHEREFORE**, Plaintiffs request that this Honorable Court enter judgment in favor of Plaintiffs and against Defendants as to this Count I and enter an order:

(i)     Declaring that Defendant ANTTIX INC. has violated Section 43(a) of the Lanham Act;

(ii)     Declaring that Defendant CHRISTOPHER JOHANSEN has violated

Section 43(a) of the Lanham Act;

(iii)    Preliminarily and permanently enjoining Defendants, their subsidiaries,

corporate parents, divisions, directors, officers, owners, partners, agents,

employees, attorneys, representatives, and all those persons in active

concert and participation with Defendants from violating Plaintiffs' rights

by way of false advertising including but not limited to the dissemination

of the false and misleading statements giving rise to the Lanham Act

violations described herein;

(iv)    Ordering Defendants to pay Plaintiffs their respective damages, lost

profits, Defendants' profits, and/or other compensatory damages sustained

or accrued in connection with the unlawful conduct described in this

Count I, in one or more amounts to be determined at trial;

(v)     Ordering Defendants to pay Plaintiffs their reasonable attorney's fees and

costs; and

(vi)    Granting all other relief that this Court may deem proper.

## <u>COUNT II</u>
**(Violations of the Uniform Deceptive Trade Practices Act (815 ILCS 510/2))**

49.     Plaintiffs repeat and re-allege each and every allegation of paragraphs 1-48 as

though fully set forth herein.

50.     Defendants' false and misleading statements regarding the "Web Accessibility

Initiative" constitute a deceptive trade practice under Illinois law in that such statements caused a

high likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or

certification of its website accessibility auditing and remediation services.

51.     Defendants' false and misleading statements to Plaintiffs' clientele regarding the nature and extent of their abilities vis-à-vis performance of web accessibility auditing and website remediation services constitute a deceptive trade practice under Illinois law in that such statements materially misrepresented the characteristics, benefits, and uses of such services.

52.     Defendants' false and misleading statements to Plaintiffs' clientele regarding (i) ADA compliance requirements; (ii) GDPR compliance requirements; and (iii) the extent to which use of Products and Services provided by Plaintiffs would expose clients to penalties, fines, or other enforcement actions pursuant to alleged noncompliance do individually and collectively constitute a deceptive trade practice under Illinois law in that such statements disparage services provided by Plaintiff by way of false or misleading representation of fact.

53.     Defendants did willfully, knowingly, and intentionally engage in deceptive trade practices in violation of the Uniform Deceptive Trade Practices Act and, unless immediately enjoined by this Court, will continue to deceive, mislead, and confuse customers to derive economic benefit at the expense of Plaintiffs and the public at large.

54.     As a direct and proximate cause of Defendants' unlawful trade practices, including those set forth herein, Defendants have caused, are causing, and unless immediately enjoined by this Court, will continue to cause immediate and irreparable harm to Plaintiffs for which there is no adequate remedy at law, and for which Plaintiffs are entitled to injunctive relief pursuant to 815 ILCS 510/3.

**WHEREFORE**, Plaintiffs request that this Honorable Court enter judgment in favor of Plaintiffs and against Defendants as to this Count II and enter an order:

(i)     Declaring that Defendant ANTTIX INC. has violated the Uniform Deceptive Trade Practices Act;

(ii)      Declaring that Defendant CHRISTOPHER JOHANSEN has violated the Uniform Deceptive Trade Practices Act;

(iii)      Preliminarily and permanently enjoining both Defendants, their subsidiaries, corporate parents, divisions, directors, officers, owners, partners, agents, employees, attorneys, representatives, and all those persons in active concert and participation with Defendants from violating Plaintiffs' rights by way of deceptive trade practices including but not limited to the conduct described in this Count II.

(iv)      Ordering Defendants to pay Plaintiffs their respective damages, lost profits, Defendants' profits, and/or other compensatory damages sustained or accrued in connection with the unlawful conduct described in this Count II, in one or more amounts to be determined at trial;

(v)      Ordering Defendants to pay Plaintiffs their reasonable attorney's fees and costs; and

(vi)      Granting all other relief that this Court may deem proper.

## COUNT III
### (Tortious Interference)

55.      Plaintiffs repeat and re-allege each and every allegation of paragraphs 1-54 as though fully set forth herein.

56.      One of the targets of Defendants' improper solicitation efforts was McBride's on 52 Inc. ("McBride's"), a client under contract with Plaintiffs Now Marketing and Lime Crunch at all times relevant to this action.

57.      As a direct consequence of Defendant Johansen's solicitations on behalf of Defendant Anttix to breach their contract, Plaintiff Lime Crunch was forced to renegotiate the

terms of its contract for Products and Services with McBride's or risk losing the client altogether.

58.     Defendant Johansen, acting in his official capacity on behalf of Anttix, had actual knowledge of the existing business relationship between McBride's and Plaintiffs.

59.     Defendant Johansen further had actual knowledge of the specific terms of such agreement, attributable in part to his wrongful possession of Confidential Business Material.

60.     Defendants' solicitation of McBride's was intentional and malicious and calculated to interfere with its ongoing relationship with Plaintiffs.

61.     Defendants' solicitation caused a disruption of this business relationship resulted in a loss of income equal to not less than $1,000.00.

**WHEREFORE**, Plaintiffs request that this Honorable Court enter judgment in favor of Plaintiffs and against Defendants as to this Count III and enter an order:

(i)     Declaring that Defendant ANTTIX INC. has engaged in tortious economic interference in violation of Illinois law;

(ii)    Declaring that Defendant CHRISTOPHER JOHANSEN has engaged in tortious economic interference in violation of Illinois law;

(iii)   Preliminarily and permanently enjoining both Defendants, their subsidiaries, corporate parents, divisions, directors, officers, owners, partners, agents, employees, attorneys, representatives, and all those persons in active concert and participation with Defendants from violating Plaintiffs' rights by way of tortious interference including but not limited to the conduct described in this Count III.

(iv)    Ordering Defendants to pay Plaintiffs their respective damages, lost profits, Defendants' profits, and/or other compensatory damages sustained or

accrued in connection with the unlawful conduct described in this Count III, in one or more amounts to be determined at trial;

(v)     Ordering Defendants to pay Plaintiffs their reasonable attorney's fees and costs; and

(vi)    Granting all other relief that this Court may deem proper.

**COUNT IV**
**(Johansen's Violations of the Defend Trade Secrets Act (18 U.S.C. § 1836))**

62.     Plaintiffs repeat and re-allege each and every allegation of paragraphs 1-61 as though fully set forth herein.

63.     In his capacity as an independent sales representative and account manager for Now Marketing, defendant Johansen had access to the Confidential Business Material.

64.     The Confidential Business Material consisted of sensitive and proprietary documents and writings relating to products, services, clients, referral sources, and technology intended for use by Plaintiffs in interstate commerce.

65.     At all times relevant hereto, Plaintiff Now Marketing exercised an abundance of care to keep the Confidential Business Material secret, using a customer relationship management (CRM) system with password protection and other network security protocols to ensure that Confidential Business Material remained secret and segregated from its ordinary business files.

66.     Plaintiff Now Marketing's President and CEO, Matthew Hanni, intended and understood that defendant Johansen's access to the Confidential Business Material was intended to be temporary and limited in scope to usage by Johansen on an as-needed basis and conveyed that understanding to contractors, including defendant Johansen, on numerous occasions.

67.     Defendant Johansen understood that he was not permitted to access any or all of the Confidential Business Material for any use other than his work on behalf of Plaintiff Now

Marketing.

68.    During calendar year 2018, Johansen used his access and role with the company as a pretext to obtain permanent digital possession of the Confidential Business Material without Now Marketing's prior knowledge or consent.

69.    Defendant Johansen's brazen and unlawful attempts to electronically access Plaintiffs' email servers continue as of the date of this filing.

70.    The wrongfulness of Johansen's taking of the Confidential Business Material is further confirmed by his refusal to honor the Company's written request to return any Company materials in his possession or control, a request that necessarily included the Confidential Business Material.

71.    Johansen understood that the Confidential Business Material was valuable and that its misappropriation would be injurious to Now Marketing's ongoing business operations and would adversely affect its competitive position in the marketplace, while simultaneously boosting his own prospects as an independent sales representative and entrepreneur.

72.    Johansen's misappropriation of Now Marketing's trade secrets proximately caused damages arising out of the false and misleading statements contained within Johansen's solicitations of Plaintiffs' current clientele as enumerated herein at ¶¶ 23-30, *supra*.

73.    Further, Johansen's misappropriation of Now Marketing's trade secrets proximately caused damages resulting from the inducement of at least one such target[2] of the solicitation efforts, McBride's on 52 Inc., to threaten early termination of its business relationship

---

[2] It is anticipated that other clients may be induced to terminate (or threaten to terminate) their business relationships prior to the triggering of the automatic renewal provisions of their respective agreements with Plaintiffs in a manner functionally identical to the episode involving McBride's. Accordingly, Plaintiffs may seek leave to amend this Complaint to reflect additional instances of tortious interference by Defendants and the enumeration of damages resulting therefrom.

with Plaintiff Lime Crunch in the absence of material concessions.

74.     Defendants' unlawful solicitations of Plaintiffs' clientele were made possible by the trade secret misappropriations described herein and have led to a diminution in the overall financial value of Plaintiffs' client relationships and Plaintiffs' competitiveness in the marketplace.

**WHEREFORE**, Plaintiffs request that this Honorable Court enter judgment in favor of Plaintiffs and against defendant Johansen as to this Count IV and enter an order:

      (i)     Finding that defendant CHRISTOPHER JOHANSEN has violated the Defend Trade Secrets Act;

      (ii)    Preliminarily and permanently enjoining defendant Johansen from continued possession or use of the Confidential Business Material;

      (iii)   Ordering defendant Johansen to pay Plaintiffs their respective damages, lost profits, and/or other compensatory damages sustained or accrued in connection with the unlawful conduct described in this Count IV, in one or more amounts to be determined at trial;

      (iv)   Ordering defendant Johansen to pay Plaintiffs their reasonable attorney's fees and costs; and

      (v)    Granting all other relief that this Court may deem proper.

## COUNT V
### (Anttix's Violations of the Defend Trade Secrets Act (18 U.S.C. § 1836))

75.     Plaintiffs repeat and re-allege each and every allegation of paragraphs 1-74 as though fully set forth herein.

76.     Upon information and belief, defendant Anttix hired defendant Johansen as its Director of Sales and Marketing on or before October 1, 2018.

77.     Beginning no later than October 1, 2018, armed with the misappropriated client

lists and other trade secrets, defendant Johansen began to solicit Plaintiffs' existing client roster on behalf of his new employer, Anttix.

78.    A modicum of reasonable diligence by defendant Anttix would have confirmed the troubling news that its abundance of new sales leads being generated and contacted by defendant Johansen were obtained improperly from a person (Johansen) who either (i) used improper means to acquire them from Now Marketing; or (ii) owed a prior duty to maintain their secrecy or otherwise limit their use.

79.    Accordingly, defendant Anttix had actual or constructive knowledge that its newly minted Director of Sales and Marketing had brought with him misappropriated trade secrets for its benefit and as such is in violation of the Defend Trade Secrets Act.

80.    In the alternative, defendant Anttix is liable for defendant Johansen's violations of the Defend Trade Secrets Act pursuant to the doctrine of *respondeat superior*.

81.    Although vicarious liability is appropriate here, its application is not necessary. The fact that defendant Anttix's fraudulent WAI gambit relates directly to website accessibility—the primary focus of the solicitations effected by its new hire Johansen—further establishes that Defendants acted in concert to implement this new marketing strategy and that one of the linchpins of the strategy was a veritable frontal assault on Plaintiffs' clientele.

82.    Possession of the misappropriated Confidential Business Material, including personal cell phone numbers of clients' points of contact as well as the terms of their existing contracts with Plaintiffs, facilitated Defendants' improper efforts.

83.    Defendant Anttix understood that the Confidential Business Material was valuable and that its misappropriation and use would be injurious to Now Marketing's ongoing business operations and would improve Anttix's competitive position in the marketplace to the direct

detriment of Plaintiffs.

84. Defendant Anttix's misappropriation of Now Marketing's trade secrets proximately caused damages arising out of the false and misleading statements contained within Johansen's solicitations of Plaintiffs' current clientele as enumerated herein at ¶¶ 23-30, *supra*.

85. Further, defendant Anttix's misappropriation and use of Now Marketing's trade secrets proximately caused damages resulting from the inducement of at least one such target of the solicitation efforts, McBride's on 52 Inc., to threaten early termination of its business relationship with Plaintiffs in the absence of material concessions.

**WHEREFORE**, Plaintiffs request that this Honorable Court enter judgment in favor of Plaintiffs and against defendant Anttix as to this Count V and enter an order:

(i) Finding that defendant ANTTIX INC. has violated the

Defend Trade Secrets Act;

(ii) Preliminarily and permanently enjoining defendant Johansen from

continued possession or use of the Confidential Business Material;

(iii) Ordering defendant Anttix, Inc. to pay Plaintiffs their respective damages,

lost profits, and/or other compensatory damages sustained or accrued in

connection with the unlawful conduct described in this Count V, in one or

more amounts to be determined at trial;

(iv) Ordering defendant Anttix, Inc. to pay Plaintiffs their reasonable

attorney's fees and costs; and

(v) Granting all other relief that this Court may deem proper.

## COUNT VI
**(Johansen's Violations of the Illinois Trade Secrets Act (765 ILCS 1065))**

86. Plaintiffs repeat and re-allege each and every allegation of paragraphs 1-85 as

though fully set forth herein.

87.     In his capacity as an independent sales representative and account manager for Now Marketing, defendant Johansen had access to the Confidential Business Material.

88.     The Confidential Business Material consisted of sensitive and proprietary documents and writings relating to products, services, clients, referral sources, and technology intended for use by Plaintiffs in interstate commerce.

89.     At all times relevant hereto, Plaintiff Now Marketing exercised an abundance of care to keep the Confidential Business Material secret, using a customer relationship management (CRM) system with password protection and other network security protocols to ensure that Confidential Business Material remained secret and segregated from its ordinary business files.

90.     Plaintiff Now Marketing's President and CEO, Matthew Hanni, intended and understood that defendant Johansen's access to the Confidential Business Material was intended to be temporary and limited in scope to usage by Johansen on an as-needed basis and conveyed that understanding to contractors, including defendant Johansen, on numerous occasions.

91.     Defendant Johansen understood that he was not permitted to access any or all of the Confidential Business Material for any use other than his work on behalf of Plaintiff Now Marketing.

92.      During calendar year 2018, Johansen used his access and role with the company as a pretext to obtain permanent digital possession of the Confidential Business Material without Now Marketing's prior knowledge or consent.

93.     The wrongfulness of Johansen's taking of the Confidential Business Material is further confirmed by his refusal to honor the Company's written request to return any Company materials in his possession or control, a request that necessarily included the Confidential Business

Material.

94.     Johansen understood that the Confidential Business Material was valuable and that its misappropriation would be injurious to Now Marketing's ongoing business operations and would adversely affect its competitive position in the marketplace, while simultaneously boosting his own prospects as an independent sales representative and entrepreneur.

95.     Johansen's misappropriation of Now Marketing's trade secrets proximately caused damages arising out of the false and misleading statements contained within Johansen's solicitations of Plaintiffs' current clientele as enumerated herein at ¶¶ 23-30, *supra*.

96.     Further, Johansen's misappropriation of Now Marketing's trade secrets proximately caused damages resulting from the inducement of at least one such target of the solicitation efforts, McBride's on 52 Inc., to threaten early termination of its business relationship with Plaintiffs in the absence of material concessions.

97.     Defendants' unlawful solicitations of Plaintiffs' clientele were made possible by the trade secret misappropriations described herein and have led to a diminution in the overall financial value of Plaintiffs' client relationships and Plaintiffs' competitiveness in the marketplace.

**WHEREFORE**, Plaintiffs request that this Honorable Court enter judgment in favor of Plaintiffs and against defendant Johansen as to this Count VI and enter an order:

(i)     Finding that defendant CHRISTOPHER JOHANSEN has violated the Illinois Trade Secrets Act;

(ii)    Preliminarily and permanently enjoining defendant Johansen from continued possession or use of the Confidential Business Material;

(iii)   Ordering defendant Johansen to pay Plaintiffs their respective damages, lost profits, and/or other compensatory damages sustained or accrued in

connection with the unlawful conduct described in this Count VI, in one or more amounts to be determined at trial;

(iv)    Ordering defendant Johansen to pay Plaintiffs their reasonable attorney's fees and costs; and

(v)    Granting all other relief that this Court may deem proper.

<u>**COUNT VII**</u>
**(Anttix's Violations of the Illinois Trade Secrets Act (765 ILCS 1065))**

98.    Plaintiffs repeat and re-allege each and every allegation of paragraphs 1-97 as though fully set forth herein.

99.    Upon information and belief, defendant Anttix hired defendant Johansen as its Director of Sales and Marketing on or before October 1, 2018.

100.    Beginning no later than October 1, 2018, armed with the misappropriated client lists and other trade secrets, defendant Johansen began to solicit Plaintiffs' existing client roster on behalf of his new employer, Anttix.

101.    A modicum of reasonable diligence by defendant Anttix would have confirmed the troubling news that its abundance of new sales leads being generated and contacted by defendant Johansen were obtained improperly from a person (Johansen) who either (i) used improper means to acquire them from Now Marketing; or (ii) owed a prior duty to maintain their secrecy or otherwise limit their use.

102.    Accordingly, defendant Anttix had actual or constructive knowledge that its newly minted Director of Sales and Marketing had brought with him misappropriated trade secrets for its benefit and as such is in violation of the Illinois Trade Secrets Act.

103.    In the alternative, defendant Anttix is liable for defendant Johansen's violations of the Illinois Trade Secrets Act pursuant to the doctrine of *respondeat superior*.

21

104.    But although vicarious liability is also appropriate here, its application is not necessary. The fact that defendant Anttix's fraudulent WAI gambit relates directly to website accessibility—the primary focus of the solicitations effected by its new hire Johansen—further establishes that Defendants acted in concert to implement this new marketing strategy and that one of the linchpins of the strategy was a veritable frontal assault on Plaintiffs' clientele.

105.    Possession of the misappropriated Confidential Business Material, including personal cell phone numbers of clients' points of contact as well as the terms of their existing contracts with Plaintiffs, facilitated Defendants' improper efforts.

106.    Defendant Anttix understood that the Confidential Business Material was valuable and that its misappropriation and use would be injurious to Now Marketing's ongoing business operations and would improve Anttix's competitive position in the marketplace to the direct detriment of Plaintiffs.

107.    Defendant Anttix's misappropriation of Now Marketing's trade secrets proximately caused damages arising out of the false and misleading statements contained within Johansen's solicitations of Plaintiffs' current clientele as enumerated herein at ¶¶ 23-30, *supra*.

108.    Further, defendant Anttix's misappropriation and use of Now Marketing's trade secrets proximately caused damages resulting from the inducement of at least one such target of the solicitation efforts, McBride's on 52, Inc., to threaten early termination of its business relationship with Plaintiffs in the absence of material concessions.

**WHEREFORE**, Plaintiffs request that this Honorable Court enter judgment in favor of Plaintiffs and against defendant Anttix as to this Count VII and enter an order:

(i)      Finding that defendant ANTTIX INC. has violated the

         Illinois Trade Secrets Act;

(ii)     Preliminarily and permanently enjoining defendant Johansen from continued possession or use of the Confidential Business Material;

(iii)    Ordering defendant Anttix, Inc. to pay Plaintiffs their respective damages, lost profits, and/or other compensatory damages sustained or accrued in connection with the unlawful conduct described in this Count VII, in one or more amounts to be determined at trial;

(iv)    Ordering defendant Anttix, Inc. to pay Plaintiffs their reasonable attorney's fees and costs; and

(v)     Granting all other relief that this Court may deem proper.

Respectfully submitted,

INTERCOVE INC.
LIME CRUNCH INC.
NOW MARKETING SERVICES INC

Date:   March 21, 2019          By:     /s/ Richard J. Zito, Esq.
                                         One of their attorneys

Richard J. Zito, Esq. (ARDC No. 6291139)
LAW OFFICE OF RICHARD J. ZITO LLC
200 East Randolph Drive, Suite 5100
Chicago, Illinois 60601
T: (312) 883-5298
E: rich@zitolawchicago.com

23